IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (859) 420-2472 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 310260601533697, THAT IS IN THE CUSTODY OR CONTROL OF T-MOBILE USA, INC. | Case No. 5:23-MJ-5145-MAS<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher Hubbuch, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned call number (859) 420-2472, with International Mobile Subscriber Identity/Electronic Serial Number 310260601533697 (the "Target Cell Phone"), with listed subscriber Luis BLANCO, that is in the custody or control of T-Mobile USA, Inc., a wireless communications service provider that is headquartered at 3618 Factoria Boulevard SE. Bellevue, Washington 98006 in the Western District of Washington.  As a provider of wireless communications service, T-Mobile USA, Inc. is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require T-Mobile to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  See 18 U.S.C. § 3123(b)(1).

4.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March 2001.  I am currently assigned to the London Resident Agency, within the Louisville Division of the FBI.  I have received training from the FBI Academy in Quantico, Virginia, and elsewhere, which covered a variety of investigative programs and techniques, including interviewing, report writing, and an overview of legal statutes and criminal laws.  I have personally conducted and assisted in a variety of criminal investigations into violations of federal law, including narcotics crimes and bank robberies

2

involving the extensive use of cellular telephone analysis, exploitation and communications intercepts.

5.      At the FBI, I conduct criminal investigations, make arrests, and execute search and seizure warrants for violations of federal law. As such, I am a federal law enforcement officer authorized to investigate violations of federal law, and to apply for and execute warrants issued under the authority of the United States.  I have more than ten (10) years of experience involving investigations of federal crimes involving the use of cellular telephones.

6.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 USC § 1028, Identification Document Fraud, 18 USC § 1028(A), Aggravated Identity Theft, 42 USC § 408(a)(7)(C), counterfeiting Social Security cards, and 18 USC § 1546(a), counterfeiting Alien Registration cards, have been committed, are being committed, and will be committed by Target Cell Phone subscriber Luis BLANCO or other currently unknown persons.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

8.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     The United States, including the FBI, is conducting a criminal investigation of an unidentified subject or subjects regarding possible violations of 18 USC § 1028 Identification Document Fraud, 18 USC § 1028(A) Aggravated Identity Theft, 42 USC § 408(a)(7)(C), counterfeiting Social Security cards, and 18 USC § 1546(a), counterfeiting Alien Registration cards.

10.     The requested warrant is sought in furtherance of the FBI's investigation of the use and user(s) of the Target Cell Phone in furtherance of crimes involving the production, transfer, and use of fraudulent identification documents.

11.     The Federal Bureau of Investigation (FBI) at London, Kentucky, is investigating the Target Cell Phone which has been determined to be used to facilitate the production and delivery of false identity documents to undocumented immigrants, primarily from Mexico, in the Eastern District of Kentucky and presumably elsewhere. From my review of available records, the Target Cell Phone was documented in an FBI criminal case in 2016 as being associated with the distribution of fake identity documents.

4

12.    In February 2019, the immediate family member of a person acting as FBI Confidential Human Source #1 (CHS 1) was arrested in Kentucky for using false identification documents which presented the personal identifying information of another person legally residing in the United States.  It was unknown to the legal United States resident that his/her identifying information had been used by CHS 1's immediate family member to obtain employment at a business located in the Eastern District of Kentucky. The immediate family member of CHS 1 came to law enforcement attention after the legal resident, whose identifying information had been used, filed a complaint with law enforcement in the Eastern District of Kentucky, after learning that his/her Social Security Number had been used to claim tax benefits by another individual. An investigation into the complaint resulted in the arrest of CHS 1's immediate family member whose true identity was positively determined by their fingerprints. Law enforcement determined that the individual was unlawfully in the United States. When he/she was arrested, CHS 1's family member told the arresting law enforcement agency that in 2016 he/she had purchased the identification documents through coordination with the Target Cell Phone.  He/she stated that the purchase took place in person in Somerset Kentucky.  The resulting criminal charges are still pending against CHS 1's immediate family member. CHS 1 assisted law enforcement in hopes of mitigating the family member's criminal conduct although no promises have been made in this regard to CHS 1, especially as it relates to the family member's possible deportation from the United States.

13.     At my direction, CHS 1, who had also previously communicated with the Target Cell Phone to obtain fake identity documents, contacted the Target Cell Phone by text messages in Spanish on or about April 28, 2019.  CHS 1 and the user of the Target Cell Phone discussed what types of identification could be provided and the price. The following day, April 29, 2019, I spoke with CHS 1 who later made those text messages available to me for review. I have reviewed those text message with CHS 1 and determined the user of the Target Cell Phone remained willing to sell CHS 1 a fake paper Social Security Card and plastic identification card containing false information. In response to CHS 1's text, the user of the Target Cell Phone texted CHS 1 that he/she could obtain an ID for one-hundred seventy dollars ($170.00). CHS 1 also told me his/her spouse also previously obtained fake identification documents several years ago by contacting the Target Cell Phone.  These documents were delivered to CHS 1's spouse at Somerset, Kentucky, which is in the Eastern District of Kentucky.

14.     I subsequently requested and obtained subscriber and call/text toll records for the Target Cell Phone by subpoena to service provider T-Mobile for the time-period from January 1, 2019, to December 11, 2019. I have reviewed those records which revealed the Target Cell Phone is a mobile telephone number subscribed to by "Luis Blanco", date of birth July 3, 1981, with no further information available. According to the subscriber information, the device using the Target Cell Phone was assigned IMSI 310260549684052. The Target Cell Phone has been active since on or about November

6, 2011, and payments for service provided to the Target Cell Phone have all been made in cash within the scope of the records I received and reviewed.

15.     I have reviewed call and text records for the Target Cell Phone and observed a consistent pattern of short duration contacts with many numerous different telephone numbers which I believe are patterns associated with the request and subsequent delivery of fake identity documents. The Target Cell Phone was also in contact with telephone numbers in Veracruz, Mexico, during the duration of the call and text records I reviewed.

16.     From review of the call/text toll records, I also determined the Target Cell Phone was in frequent contact with telephone number (502) 224-4000 throughout the duration of the records. I searched available FBI records and located an FBI intelligence product from 2015 which identified telephone number (502) 224-4000 as being used by a Hispanic male who forged driver's licenses, green cards, work authorization cards, passports, and other documents.

17.     I subsequently requested and obtained subscriber and call and text records for telephone number (502) 224-4000 by subpoena to service provider AT&T for the time-period from January 1, 2019, to December 11, 2019. I have reviewed those records which identified telephone number (502) 224-4000 as a pre-paid AT&T, doing business as Cricket Wireless, wireless device subscribed to by "Jaime Garcia", 7203 Patrick Henry Court, Apartment 1, Louisville, Kentucky. At this time, I have no additional information about Jaime Garcia.

18.     On January 29, 2020, CHS 1 sent a text message to the Target Cell Phone at my direction, inquiring about purchasing a false identification card (plastic) as well as a false Social Security card (paper). The unidentified subject utilizing the Target Cell Phone advised CHS 1 to call the number.  The proceeding phone call, although occurring in Spanish, was consensually recording in the presence of law enforcement agents. Following the call, CHS 1 provided a synopsis of the call to law enforcement agents.

19.     The unidentified subject advised CHS 1 that "paper" and "plastic ID", i.e., a Social Security card and an ID, would cost one-hundred eighty dollars ($180.00). However, the unidentified suspect advised CHS 1 that did he not have any identifying information to provide for use by CHS 1 at this time. I understood this to mean that the unidentified subject is not currently in possession of identifying information which would appear valid if checked because it belongs to a lawful citizen. The unidentified subject advised CHS 1 to text a photograph of himself/herself along with the desired personal identifying information to the unidentified subject by text message. The unidentified subject advised CHS 1 that if he/she could provide personal identifying information, the unidentified suspect could have the documents in question ready the next day. CHS 1 and the unidentified subject agreed that, when the identifying information was provided and the false documents produced, Somerset, Kentucky, would be a good location to exchange money for the false identification documents. The unidentified subject later indicated to CHS 1 that he/she could take his time in acquiring the identifying information, and the unidentified subject could oblige him once he did. My understanding

8

of the unidentified subject's position that time is not of the essence for the acquisition of identifying information is that false identification documents are being produced habitually, either by the currently unidentified subject or another person or persons and are readily available to the unidentified subject.

20.     On February 3, 2020, CHS 1 contacted the Target Cell Phone, at my direction, by text and inquired about purchasing the identity documents they previously discussed. The unidentified subject asked CHS 1 what state he/she wanted the ID to come from. The unidentified subject told CHS 1 the best ID he makes is from Tennessee. CHS 1 agreed. I provided CHS 1 with a Social Security Number to use.  CHS 1, at my direction, sent a photograph of him/herself to the Target Cell Phone with the Social Security Number I provided and an alias name and date of birth. The unidentified subject asked CHS 1 if CHS 1 would come to Lexington, Kentucky, to exchange cash for the identity documents, stating the price would be one-hundred twenty dollars ($120). CHS 1 agreed.

21.     On February 5, 2020, CHS 1 purchased a fraudulent Tennessee identification card and Social Security card for one-hundred twenty dollars ($120) from the user of the Target Cell Phone. These documents contained the information CHS 1 sent to the Target Cell Phone two days prior and included an address in Tennessee previously unknown to me or CHS 1. This purchase occurred at Lexington, Kentucky. Special Agents of the FBI and the Social Security Administration Office of the Inspector General (SSA-OIG) conducted physical surveillance of this purchase. The physical

9

surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 1 in exchange for cash. These fake identification documents were recovered from CHS 1 and are maintained as evidence by the FBI.  The conversation between CHS 1 and the unidentified male occurred in Spanish and was recorded.  I debriefed CHS 1 after the purchase and he/she told me the unidentified male sold a number of fake Tennessee IDs to a Hispanic male who works in Monticello, Kentucky, during the Summer of 2019. The conversation between the unidentified subject and CHS 1 did not provide me additional information about the true identity of the unidentified subject.

22.     On February 5, 2020, physical surveillance did identify the vehicle driven by the unidentified male subject. I requested, received, and reviewed the Kentucky vehicle registration information for the vehicle driven by the unidentified subject which is registered to "Teodoro Leal Paez" at address 148 Surfside Drive #3, Lexington, Kentucky. The Social Security Number listed on the vehicle registration was determined by the SSA-OIG to be invalid. The unidentified male subject's vehicle was later located near the identified Surfside Drive address. The true identity of the currently unidentified male user of the Target Cell Phone remains unknown to me at this time.

23.     On January 28, 2020, I requested and was granted a search warrant for historical cell site location information for the Target Cell Phone. I received that information from T-Mobile on or about February 7, 2020. I have reviewed that data. From the data, I have learned the Target Cell Phone travels frequently between

Lexington, Kentucky, and Louisville, Kentucky. The Target Cell Phone is most frequently located in the vicinity of Surfside Drive in Lexington, Kentucky. Additionally, the Target Cell Phone has received or initiated almost eighty thousand (80,000) calls and text messages during the time-period from April 1, 2019, to January 24, 2020.

24.     On February 19, 2020, Magistrate Judge Hanly A. Ingram, Eastern District of Kentucky, authorized a sealed Search and Seizure warrant for the Target Cell Phone (6:20-MJ-6011-HAI). The warrant was executed, and precision location / GPS data was collected for the Target Cell Phone from the period February 19, 2020, to April 3, 2020. This data was used to track the Target Cell Phone while conducting physical surveillance. Physical surveillance was able to confirm the locations where the user of the Target Cell Phone visited. During that time frame, the investigation was not able to definitively locate the exact apartment where the user was staying in Lexington, Kentucky.

25.     The FBI developed another CHS (hereinafter "CHS 2") who was able to purchase fake identity documents from the user of the Target Cell Phone. On May 15, 2020, CHS 2 purchased a fraudulent Tennessee identification card and Social Security card for one-hundred twenty dollars ($120) from the user of the Target Cell Phone at Lexington, Kentucky. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

26. On April 1, 2021, CHS 2 purchased a fraudulent U.S. Government Permanent Resident identification card and Social Security card for one-hundred twenty dollars ($120) from the user of the Target Cell Phone at Lexington, Kentucky. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. According to CHS 2 and from surveillance video which I have reviewed, I believe this is the same person from the previous evidence purchase. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

27. On January 12, 2023, CHS 2 purchased six (6) fraudulent U.S. Government Permanent Resident identification cards and six (6) Social Security cards for seven-hundred twenty dollars ($720) from the user of the Target Cell Phone at Lexington, Kentucky. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. According to CHS 2 and from surveillance video which I have reviewed, I believe this is the same person from the previous two evidence purchases. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

28. On January 18, 2023, I requested and received updated records from T-Mobile for the Target Cell Phone. The Target Cell Phone remains subscribed to by "Luis Blanco" and has the same IMSI. Further, the Target Cell Phone continued to demonstrate a high volume of calls and texts. For the time-period October 1, 2022, to January 17, 2023, there were approximately thirty-four thousand nine-hundred calls and texts.

29.     On March 13, 2023, this Court authorized a forty-five (45) days pen register and precision location search warrant for the Target Cell Phone (5:23-MJ-5079-MAS). At the time the warrant was executed, the IMSI for the Target Cell Phone was 310260549684052. This search warrant was served on T-Mobile and began collecting information on March 13, 2023. The current legal authority from this Court expires on April 26, 2023.

30.     On March 23, 2023, a uniformed Lexington Police Department officer was provided with real-time precision GPS location for the Target Cell Phone. The Target Cell Phone was located at Malone's restaurant in Lexington, Kentucky. The uniformed officer located a black GMC Terrain parked at the restaurant bearing Kentucky License Plate E9A 642. I determined this vehicle was registered to TOMAS LEAL-PAEZ and CELESTINO BARRERA on January 23, 2023, at 2604 El Patio Place, Apartment #311, Louisville, Kentucky. This address is consistent with where the Target Cell Phone has been located regularly over the last three (3) weeks. The SSA-OIG advised determined the Social Security Numbers associated with TOMAS LEAL-PAEZ and BARRERA used to register the vehicle do not belong to either.

31.     On March 28, 2023, an FBI Task Force Officer and a Lexington Police Department uniformed patrol officer conducted a ruse at 168 Surfside Drive, knocking on each apartment door. The building was determined to consist of eight (8) individual apartment units. Only one person in Apartment #2 responded to the ruse and was not the subject of investigation. The same white GMC Terrain bearing Kentucky license plate

13

218 ZVW was parked at the apartment complex behind the building marked "168". The TFO and officer then went to the apartment complex rental office and inquired about tenants in Building 168 and about the GMC Terrain. Investigation determined the apartment complex parking sticker in the window of the GMC Terrain, "1535", is associated with 168 Surfside Drive, Apartment 7.  Further, the apartment is currently rented by an individual using the name "MARIO REYES", who provided an International Driver's Permit to the apartment complex for identification. The permit identified MARIO REYES having date of birth July 3, 1981. An apartment complex manager was shown a surveillance photograph of the subject I obtained from a prior controlled purchase of fake identification documents by CHS 2. The manager said the photograph looked like MARCOS REYES, MARIO REYES' brother who stayed in Apartment 7 with MARIO REYES at one time, but she had not been him there for about six (6) months. MARCOS REYES provided the apartment complex a Mexican Consular Identification which indicated a date of birth October 19, 1984. From my investigation, I believe MARCOS REYES and MARIO REYES are other alias names used by subjects of this investigation.

32.     From my review on April 20, 2023, of ongoing GPS ping data collection authorized by this Court, the Target Cell Phone stopped visiting the Surfside Drive apartments entirely after March 30, 2023, and has been primarily located at El Patio Apartments, Louisville, Kentucky. I believe this was prompted by the law enforcement inquiry on March 28, 2023.

14

33.     On April 12, 2023, the user of the Target Cell Phone traveled to meet CHS 2 at Richmond, Kentucky, in a black GMC Terrain bearing Kentucky License Plate E9A 642. At my direction and oversight, the CHS 2 purchased two (2) fraudulent U.S. Government Permanent Resident identification cards and two (2) Social Security cards for two-hundred forty dollars ($240) from the user of the Target Cell Phone at Richmond, Kentucky. The precision location information from the on-going search warrant confirmed the Target Cell Phone traveled from Louisville, Kentucky, to Richmond, Kentucky, in conjunction with the purchase of the fake identity documents on April 12, 2023. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. According to CHS 2 and from surveillance video which I have reviewed, I believe this is the same person from the previous evidence purchase in January 2023.  These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

34.     On April 24, 2023, this Court authorized a warrant extending the collection of pen register and precision location data for the Target Cell Phone. That warrant was served on T-Mobile USA, Inc. on April 24, 2023.  T-Mobile USA, Inc. refused to comply with the warrant and indicated the IMSI was not correct.  I reviewed the on-going pen register and precision location warrant data and learned that the Target Cell Phone was located at a T-Mobile USA, Inc. retail store in Louisville, Kentucky, at approximately 1 p.m. on April 24, 2023. At about that time, the pen register data indicated the Target Cell

15

Phone had a change in its IMSI to 310260601533697. The International Mobile

Equipment Identity (IMEI) for the Target Cell Phone, however, did not change.  I believe

this indicates the user of the Target Cell Phone changed the Subscriber Identity Module

(SIM) card and not the actual device.

35.    I believe the continued use of a pen register and/or trap and trace device,

which includes the collection of cell-site data as well as more precise GPS/E-911 Phase II

data, coupled with other investigative techniques to include but not limited to physical

surveillance, will assist in further identifying where the suspect associated with the

Target Cell Phone currently resides, any locations he may be utilizing to conduct criminal

activity, any additional co-conspirators or sources used to procure personal identifying

information for use in the false documents or individuals assisting in the actual

production of the physical false documents, and any patterns of associated criminal

activity.  Further, this information will assist in the anticipated arrest of the suspect who

used of the Target Cell Phone on April 12, 2023, and in the anticipated seizure of the

Target Cell Phone.

36.    In my training and experience, I have learned that T-Mobile is a company

that provides cellular communications service to the general public.  I also know that

providers of cellular communications service have technical capabilities that allow them

to collect and generate information about the locations of the cellular devices to which

they provide service, including cell-site data, also known as "tower/face information" or

"cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna

towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate general location of the cellular device.

37.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

38.     Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.   I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

17

39.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. The Target Cell Phone had International Mobile Subscriber Identity/Electronic Serial Number 310260549684052 until April 24, 2023, but it is now assigned IMSI 310260601533697.

40.    Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and

18

other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

41.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.  The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Cell Phone, without geographic limit, for a period of fourteen (14) days pursuant to 18 U.S.C. § 3123(c)(1).

42.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by this warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment

19

B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

43.     I further request that the Court direct **T-Mobile USA, Inc.** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

44.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

/s/ Christopher A. Hubbuch

Christopher A. Hubbuch
Special Agent
Federal Bureau of Investigation

20

Transmitted by email and attested to by telephone in accordance with Rule 4.1(b)(2)(A) on April 25, 2023.


HON. MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY